UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYLAND G. HILL, JR., | No. 2:16-cv-2124 DB P |
| Petitioner, | |
| v. | ORDER |
| HATTON, WARDEN, | |
| Respondent. | |

Petitioner, formerly a state prisoner proceeding pro se and in forma pauperis, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 while incarcerated. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Both parties have consented to the undersigned's jurisdiction in this matter. (See ECF Nos. 6, 10); see also 28 U.S.C. § 636(c)(1).

**I.    PROCEDURAL HISTORY**

On July 25, 2013, petitioner was convicted of several charges including but not limited to[1] driving under the influence of alcohol (Cal. Veh. Code § 23152, subd. (a)), driving with a blood-alcohol content of .08 percent or higher (Cal. Veh. Code § 23152, subd. (b)), and driving on a DUI-related suspended license (Cal. Veh. Code § 14601.2 subd. (a)). [Clerk's Transcript, Vol. 2

---

[1] Because the instant petition raises only one claim which relates to an August 2012 blood draw taken by law enforcement in order to establish petitioner's blood-alcohol level, the court only references state charges and findings and facts of the appellate court that are relevant to this claim.

1

("CT 2"), at 361-63, 365-67; Lodged Document ("LD") 10 at 1]. As a result, petitioner was sentenced to serve a term of eight years and eight months in state prison. [LD 10 at 1].

In August 2014, petitioner appealed his conviction by filing an opening brief in the California Court of Appeal. [LD 4]. Thereafter, after making minor adjustments to the trial court's sentence and judgment, the appellate court affirmed the judgment in all other respects. [LD 7 at 14-15].

On May 16, 2016, petitioner filed a petition for review in the Supreme Court of California. [LD 8]. The high court summarily denied the petition on June 22, 2016. [LD 9].

On February 6, 2014, petitioner filed a petition for writ of habeas corpus in the Supreme Court of California. [LD 11]. On April 9, 2014, the court denied the petition. [LD 13].

On September 6, 2016, petitioner filed the instant petition in this court. (ECF No. 1). On August 30, 2017, respondent filed the answer and does not contest the timeliness of the petition. (See ECF No. 18 at 5). Petitioner did not file a traverse. The matter is deemed ready for review.

## II. BACKGROUND

In its unpublished opinion affirming petitioner's conviction on appeal, the California Court of Appeal for the Third District provided the following relevant factual and procedural summary.

*July 2012 DUI Arrest*

On July 14, 2012, Sacramento County Sheriff's Deputy John Wilson was interviewing a witness who had reported a shooting incident. While speaking with the witness, Deputy Wilson observed a black Mercedes sedan drive by and fail to stop at a nearby stop sign. The witness said the vehicle might have been involved in the shooting. Deputy Wilson got in his patrol car, turned on his overhead lights and siren, and began pursuing the Mercedes. After committing several more vehicle code infractions, the driver of the Mercedes eventually parked at an apartment complex.

Defendant was driving the car. He smelled of alcohol and had an unsteady gait. He admitted he had been drinking. Deputy Wilson arrested defendant and transported him to the county jail. Although he refused to participate in field sobriety tests at the jail, defendant nevertheless consented to a blood test. Defendant's blood sample contained a .11 percent blood-alcohol concentration.

. . . .

*August DUI Arrest*

After leaving [Alvin] Green's[2] house in the early morning hours of August 13, defendant drove to his apartment in the same black Mercedes that he had been driving when Deputy Wilson arrested him for DUI a month earlier. Defendant happened to pass Deputy Wilson on the way home. Deputy Wilson recognized defendant's car and knew defendant's license was suspended based on his previous interaction with defendant in July.

Deputy Wilson turned on his overhead lights and tried to stop defendant's car. Defendant, however, only stopped briefly to tell Deputy Wilson he was driving to his apartment and then he continued home. Once at the apartment complex, defendant parked his car and attempted to run into his apartment. Defendant had blood-shot eyes and slurred speech, he was unsteady on his feet, and he smelled of alcohol. He told officers that he sometimes drinks and drives. Defendant refused to participate in field sobriety tests. He was arrested and transported to the North Sacramento CHP station for a blood draw.

Defendant initially refused to cooperate with the blood draw After officers told him they would forcefully take a blood sample, however, defendant acquiesced. Tests revealed that defendant's blood-alcohol concentration was .17 percent.

*Trial Proceedings*

An October 2012 information charged defendant with two counts of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a), count 1 and 5), two counts of driving with a blood-alcohol content of .08 percent or higher (Veh. Code, § 23152, subd. (b), counts 2 and 6), and two counts of driving on a DUI-related suspended license (Veh. Code, § 14601.2, subd. (a), counts 3 and 7). The information also charged defendant with both felony and misdemeanor counts for evading a peace officer (Veh. Code, §§ 2800.2 subd. (a) and 2800.1, subd. (a), counts 4 and 8), inflicting corporal injury resulting in a traumatic condition on a cohabitant (§ 273.5, subd. (a), count 9), battery (§ 242, count 10), and vandalism (§ 594, subd. (a), count 11).

The DUI-related charges each included prior conviction allegations. Counts 1, 2, 5 and 6 alleged defendant had three prior convictions for violating Vehicle Code section 23152 with the last 10 years. Counts 3 and 7 alleged defendant had five prior convictions within the last five years for driving on a DUI-related suspended license. The information further alleged that defendant had suffered a

---

[2] Nearly a month after petitioner's July DUI arrest, it appears that one Alvin Green invited petitioner and petitioner's girlfriend, Alicia Smith, over to his apartment for a social visit. [See LD 7 at 3]. At some point during the visit, petitioner physically fought with both Green and Smith. [See id.].

3

prior serious felony conviction for first degree robbery (§§ 1192.7, subd. (c), 211), and that he had served a prior prison term for forgery. (§§ 667.5, subd. (b), 470, subd. (d).). The People later dismissed the prison prior allegation.

Defendant represented himself throughout the proceedings. (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].) He moved to suppress the results of the warrantless blood draw from the August DUI arrest. The court denied the motion, finding defendant had consented to the search. Even if defendant had not consented, the court concluded *McNeeley*[3] did not apply retroactively and that the officers were operating under a good faith belief that a warrant was not required under the existing state of the law.

. . . .

Except for the vandalism offense, a jury convicted defendant of all charges and found the prior conviction allegations attached to counts 1-3 and counts 5-7 true. In a subsequent bifurcated proceeding, the court found true the prior serious felony conviction allegation.

Defendant was sentenced to eight years eight months in prison, calculated as follows: the upper term of three years, doubled to six years for count 2 (§ 1192.7, subd. (c)); eight months, doubled to sixteen months for count 4, and eight months, doubled to 16 months for count 6. The sentence on counts 1 and 5 were stayed under section 654 as they were charged as alternative counts to counts 2 and 6. The court sentenced defendant to credit for time served on the remaining misdemeanor charges. Defendant timely appealed.

[LD 2 at 2-7] (brackets added) (footnote added).

## III. PETITIONER'S CLAIM

Petitioner's sole claim contests what he describes as the "warrantless and nonconsensual drawing of [his] blood" in August 2012. (See ECF No. 1 at 5) (brackets added). He asserts that the blood draw violated his rights under the Fourth Amendment. (See id.). The claim states in its entirety and verbatim the following:

////

////

////

---

[3] Missouri v. McNeeley, 569 U.S. 141 (2013). The McNeeley Court found that the natural metabolism of alcohol in the bloodstream does not create a per se exigency that justifies an exception to the Fourth Amendment's search warrant requirement for nonconsensual blood testing in all drunk driving cases. See McNeeley, 569 U.S. at 145.

On June 18, 2013, I filed a motion to suppress evidence from an August 2013[4] blood forced blooddraw (1538.5)[5] and a suppression hearing was held in regards to that motion on July 9, 2013. During the hearing I refuse to provide blood sample. Officer Rafael Friend testified on Aug 13th 2012 Only after being threatened to pile on top of me. Only then, I complied.

(ECF No. 1 at 5).

## IV. STANDARD OF REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)

---

[4] In the petition, petitioner refers to a blood draw that purportedly occurred in August 2013. (See ECF No. 1 at 5). However, a review of the Reporter's Transcript indicates that the draw occurred in August 2012. [See LD 2 at 25-26, 31-33, 38-41].

[5] Here, it appears that petitioner is referencing California Penal Code § 1538.5.

5

(citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). Circuit court precedent " 'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.' " Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76–77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-406). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.' " Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (internal citations and quotation marks omitted)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).

## V. APPLICABLE LAW

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976); see Newman v. Wengler, 790 F.3d 876, 881 (9th Cir. 2015) (holding Stone survived enactment of AEDPA). "The relevant

inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided." Ortiz–Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).

## VI. DISCUSSION

The facts of this case, as well as how the applicable law should be applied are clear. Well-established federal law mandates that if the state has given a petitioner a full and fair opportunity to litigate his Fourth Amendment claim, he is unable to be granted habeas relief in federal court on the ground that the evidence obtained in an illegal search and seizure was introduced at his trial. Stone, 428 U.S. at 494; see Newman, 790 F.3d at 881.

Here, the California Court of Appeal found that petitioner was given the opportunity at trial to contest the officers' drawing of his blood without a warrant. [LD 7 at 5]. Petitioner concedes this fact as well. (See ECF No. 1 at 5) (petitioner stating he filed suppression motion pursuant to California Penal Code § 1538.5 in order to contest blood draw). In addition, the trial record supports this fact. Specifically, it shows that at trial, petitioner represented himself, and he raised the issue of the August 2012 forced blood draw in a suppression hearing. [See LD 2 (Reporter's Transcript, 397 Pages) at 22-44]. Ultimately, the trial court denied the motion to suppress, finding that petitioner had consented to the search, and that even if he had not consented,[6] based upon the law at that time, the officers had acted under a good faith belief that a warrant was not required. [See LD 7 at 5; see also LD 2 at 42-43].

Because petitioner was afforded a 1538.5 suppression hearing at trial, he was given a full and fair opportunity by the trial court to litigate the Fourth Amendment blood draw claim. See Stone, 428 U.S. at 494; Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005); Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981). Consequently, he may not be granted habeas relief in federal court on the ground that the August 2012 blood draw was illegally obtained. Thus, the

---

[6] During the hearing, petitioner elicited testimony from one of the officers involved in the blood draw in question that the officials had told him that they "were going to pile on top of [petitioner] and take [his blood] by force" if petitioner did not voluntarily put out his hand and allow his blood to be drawn. [LD 2 at 41]. The trial court considered this testimony. [See LD 2 at 41-43].

8

question of whether the state courts' findings regarding the constitutionality of the blood draw were contrary to or an unreasonable application of clearly established federal law is not reached in this action. For these reasons, the court shall deny the petition and decline to issue a certificate of appealability.

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) is DENIED;

2. The court DECLINES to issue the certificate of appealability referenced in 28 U.S.C. § 2253. The parties may, however, directly and timely appeal this judgment to the appropriate United States Court of Appeals. See 28 U.S.C. § 636(c)(3).

Dated: September 17, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.HABEAS/hill2124.hc.636(c)(3).dispo.o